IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILLIAN SCHROTBERGER,<br>    Plaintiff,<br><br>    v.<br><br>JOHN DOE, as the ADMINISTRATOR<br>of the ESTATE OF ANDREAS<br>SCHNEIDER-NEUREITHER, et al,<br>    Defendants. | :<br>:<br>:<br>:  21-cv-0364-JMY<br>:<br>:<br>:<br>:<br>:<br>: |

**Memorandum**

Younge, J.                                                                                                          September 1, 2022

Currently before the Court are dual motions to dismiss the amended complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) filed by Defendants, SN Assets Americas, LLC, (hereinafter "SN Assets") and SNP Schneider-Neureither & Partner SE (hereinafter "SNP SE"). (SN Assets' Motion to Dismiss, ECF Nos. 53; SNP SE's Motion to Dismiss, ECF No. 55.) The Court finds these motions appropriate for resolution without oral argument. See Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth below, the Court will grant both motions and dismiss moving Defendants from this lawsuit.

**I.      Factual and Procedural Background**:[1]

Plaintiff filed her Amended Complaint on November 11, 2021. (Amended Complaint, ECF No. 52.) In the Amended Complaint, she proceeds on legal theories of: Battery against the Estate of Andreas Schneider-Neureither (*Id.* (Count I) ¶¶ 53-59); Assault against Estate of Andreas Schneider-Neureither; (*Id.* (Count II) ¶¶ 60-66); Intentional and Negligent Infliction of Emotional Distress against the Estate of Andreas Schneider-Neureither (*Id.* (Count III) ¶¶ 67-

---

[1] The recitation facts were taken from the Amended Complaint and Affidavits supplied by the Parties. The Court makes no finding or judgment as to the veracity of the allegations contained therein.

73); Violation of Title VII, 42 U.S.C. § 2000e *et seq*, against SNP Transformations, Inc. (*Id.* (Count IV) ¶¶ 74-83); Negligence, Gross Negligence and Recklessness against SNP Entities and SN Assets Americas, LLC (*Id.* (Count V) ¶¶ 84-87); and Conspiracy against all Defendants.[2] (*Id.* (Count VI) ¶¶ 88-93.)

In response to Plaintiff's Amended Complaint, SN Assets and SNP SE filed motions to dismiss for lack of personal jurisdiction which are currently at issue. SNP Transformations, Inc., (hereinafter "SNP Transformations") filed an Answer in which it admits that it employed Plaintiff. (Answer to Amended Complaint ¶¶ 4, 22, ECF No. 56.) Based on its filing of an Answer, the Court will presume that SNP Transformation does not contest jurisdiction.

SNP SE is a foreign company, with a business address at Dossenheimer Landstraße 100, 69121 Heidelberg, Germany. (Amended Complaint ¶ 10.) SNP SE does business in the United States through Defendant SNP Transformations, Inc. (*Id.*) SNP Transformations is a Virginia corporation with a Pennsylvania business address at 1205 Westlakes Drive, Suite 240, Berwyn, Pennsylvania. (*Id.* ¶ 9.) SN Assets is a Texas company with a business address at 125 Fox Glen Circle, Irving, TX 75062. (*Id.* ¶ 13.)

During the relevant time period, Andreas Schneider-Neureither (hereinafter "Decedent") was the CEO and Chairman of the Boards of SNP Transformations and SNP SE. (Amended Complaint ¶ 23.) He was also the largest single shareholder of SNP SE, and a principal of SN Assets. (*Id.*) Schrotberger reported to Decedent in his dual capacities at SNP Transformations and SNP SE, as well as his capacity as a principal of SN Assets. (*Id.*) In her various roles, Plaintiff was responsible for advising Decedent on all matters related to corporate strategy and daily business of SNP Transformations, SNP SE, and SN Assets. (*Id.* ¶ 28.) She further alleges

---

[2] Andreas Schneider-Neureither died on November 2, 2020 in Heidelberg, Germany. (¶ 52.)

that he subjected her to a pattern of physical abuse, sexual harassment and sexual assault.  (*Id.* ¶¶ 30-40, 42.)  She alleges that this misconduct took place while she was employed in various roles as his Chief Executive Assistant, Senior Advisor and/or consultant.  (*Id.* ¶¶ 22, 24.)

Plaintiff alleges that she first met Decedent at a business meeting in La Vegas, Nevada in November of 2017 at which point in time he groped her and made sexually suggestive comments.  (*Id.* ¶ 29.)  Later that evening, she attended a cocaine fueled after-party in his hotel room.  (*Id.*)  On January 1, 2018, she began working for SNP Transformations as a consultant, and was hired on a full-time basis as Chief Executive Assistant to the Decedent in March of 2018.  (*Id.* ¶ 22.)  In May 2018, she was promoted to the position of Senior Advisor to Decedent. (*Id.* ¶ 24.)  As of the filing of the Amended Complaint, in November 2021, it would appear that Plaintiff was still working for SNP Transformations though she alleges to have been demoted from her prior position.  (*Id.* ¶¶ 49-50.)

Plaintiff lived in Pennsylvania and reported to SNP Transformations' Berwyn, Pennsylvania office.  (Schrotberger Affidavit ¶ 7.)  While located in Pennsylvania and at SNP Transformations' Berwyn office, Plaintiff performed services for SNP Transformations, SNP SE and SN Assets.  (*Id.* ¶¶ 5, 7.)  As Senior Advisor to Decedent her annual salary was $110,000, and included a compensation package with annual bonuses, full company benefits, and participation in SNP SE's Stock Options Plan.  (Amended Complaint ¶ 28.)  Plaintiff alleges that all three corporate entities contributed to her compensation package.  (*Id.* ¶ 25; Schrotberger Affidavit ¶¶ 12-13.)  Plaintiff avers, "In my role as Senior Advisor, I reported to [Decedent] in his dual role at both SNP SE and SNP Transformations.  Because I report to [Decedent], I was under his cost center and SNP Transformations would charge back my salary to SNP SE."  (Schrotberger Affidavit ¶ 8.)  She further avers, "[m]y travel expenses when I traveled to

3

Germany or elsewhere were similarly charged back to SNP SE." (*Id.*)  With regard to SN Assets, Plaintiff avers that as part of her compensation package during the year of 2018, SN Assets paid the monthly rent for her apartment – personal residence – in Berwyn, Pennsylvania. (Schrotberger Affidavit ¶¶ 8-9; Amended Complaint ¶ 26.)  SN Assets further reimbursed Plaintiff for a business expense incurred by an SNP SE employee, Tristan Neureither, while he performed work on behalf of the companies in Pennsylvania.  (Schrotberger Affidavit ¶ 10.) Plaintiff specifically alleges that SN Assets reimbursed her for personally expenses incurred when she paid for business lodging for Tristan Neureither, and that Decedent later submitted amounts paid to SNP SE as a personal business expense.  (*Id.*)

Plaintiff alleges that SNP Transformations and SNP SE acted as a joint employer within the meaning of Title VII.  (*Id.* ¶ 15.)  She also alleges that she was an employee of SN Assets. On or about February 16, 2021, Plaintiff filed a Charge of Discrimination against SNP Transformations with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission.  (*Id.* ¶ 17.) Plaintiff's EEOC Charge was docketed as EEOC Charge Number 530-2020-05833.  By correspondence dated October 7, 2021, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge of Discrimination, advising Plaintiff had ninety (90) days to file suit against SNP Transformations.  (*Id.* ¶ 18.)  Plaintiff fails to allege that she filed a Charge of Discrimination against SNP SE or SN Assets or that she received a Notice of Right to Sue in relationship to either of these entities.  (See generally Amended Complaint.)

**II.    Legal Standard:**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Once a defendant has raised this

4

jurisdictional defense, the burden shifts to the plaintiff to present a *prima facie* case establishing jurisdiction over the non-resident defendant in the forum.  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction.").  A plaintiff has the burden to show, "with reasonable particularity," enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state.  *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

In determining the existence of personal jurisdiction, courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  *Pinker*, 292 F.3d at 368.  Once the plaintiff's "allegations are contradicted by an opposing affidavit . . . [he or she] must present similar evidence in support of personal jurisdiction."  *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009).  To counter opposing affidavits, "[p]laintiffs may not repose upon their pleadings in this manner.  Rather, they must counter defendant['s] affidavits with contrary evidence in support of purposeful availment jurisdiction."  *Id.* at 559.  To that end, "[t]he plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'"  *Lionti v. Dipna, Inc.,* No. 17-1678, 2017 U.S. Dist. LEXIS 98956, at *4-5 (E.D. Pa. June 27, 2017) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66, n.9 (3d Cir. 1984)); *see also Lehigh Gas Wholesale, LLC v. LAP Petro., LLC*, No. 14-5536, 2015 U.S. Dist. LEXIS 36569, at *5 (E.D. Pa. Mar. 23, 2015)

("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)); *In re Chocolate Confectionary*, 602 F. Supp. 2d at 556-57 (a plaintiff must present contrary evidence in the form of "actual proofs[.]").

**III.   Discussion:**

**A.   Motion to Dismiss Amended Complaint filed by Defendant, SN Assets Americas, LLC.**

Plaintiff fails to establish that a court located in Pennsylvania has personal jurisdiction over SN Assets. Plaintiff argues that specific personal jurisdiction is appropriate based on the fact that she lived in Pennsylvania and reported to work at SNP Transformations' office in Berwyn, Pennsylvania. (Opposition Brief page 5). She alleges that SN Assets compensated her for services she performed in Pennsylvania. (Amended Complaint ¶¶ 25-27; Schrotberger's Affidavit ¶¶ 7-9.) Specifically, she alleges that SN Assets paid her rent and reimbursed her for travel expenses. (*Id.*) Therefore, she argues that SN Assets reached into Pennsylvania and directed business activities toward Pennsylvania when it compensated her for work that she performed and business expenses incurred while performing her job in Pennsylvania. (Schrotberger Affidavit ¶ 12.)

Assuming the veracity of Plaintiff's factual assertions, she still fails to establish that the exercise of personal jurisdiction over SN Assets is appropriate because paying a remote worker's salary is generally insufficient to establish personal jurisdiction. *Grainer v. Smallboard, Inc.*, 2017 U.S. Dist. LEXIS 25934 (E.D. Pa. February 24, 2017) (holding that an out-of-state defendant's solicitation of a Pennsylvania resident to enter into an employment contract was not sufficient to trigger specific jurisdiction over plaintiff's employment claims, even though plaintiff worked remotely from Pennsylvania and defendant withheld income taxes for

Pennsylvania and the borough of Phoenixville.); *Kearney v. Good Start Genetics, Inc.*, 2017 U.S. Dist. LEXIS 202250, at *14-16 (E.D. Pa. December 8, 2017) (Plaintiff, a salesman, working remotely from Glen Mills, Pennsylvania, for a Massachusetts based medical diagnostic company, failed to establish that specific jurisdiction was appropriate despite the fact that defendant paid his salary, withheld Pennsylvania wage taxes, and the fact that plaintiff helped solicit business from at least twenty-four physician's offices located in Pennsylvania along with a large healthcare provider located in Blue Bell, Pennsylvania.); *Connell v. CIMC Intermodal Equipment*, No. 16-cv-714, 2016 U.S. Dist. LEXIS 166256 (M.D. Pa. Dec. 2, 2016) (holding no specific jurisdiction over employment discrimination matter despite the fact that out-of-state defendant – employer – was aware that plaintiff would be working from home in Pennsylvania.); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (a passive buyer's act of soliciting a contract with a Pennsylvania resident to purchase goods, standing alone, is insufficient to establish the minimum contacts necessary to exercise specific jurisdiction over a nonresident defendant); *See also Jeffs v. World Monuments Fund, Inc.*, 2017 U.S. Dist. LEXIS 178039 (E.D. Pa. November 14, 2021).

Plaintiff cites to *Pritchett v. Alternative Bearing Corp.*, No. 19-cv-1493, 2020 Dist. LEXIS 96316 (M.D. Pa. June 2, 2020), in support of her position that specific jurisdiction is appropriate. In *Pritchett*, the district court considered the factors outlined in *Jumara v. State Farm Ins. Co.*, 55 F3d 873, 879 (3d Cir. 1995), and found that transfer of the lawsuit to the Northern District of Illinois was in the interest of justice, for the convenience of the parties and witnesses, under 28 U.S.C. § 1404(a). Prior to transferring the lawsuit, the district court determined that it could exercise personal jurisdiction over the defendant—an Illinois corporation that employed plaintiff.

In finding specific jurisdiction appropriate, the district court in *Pritchett* relied, in part, on the fact that defendant paid the plaintiff's compensation and monthly expenses, which created a continuing obligation that was intended to reach into Pennsylvania. However, the district court also relied on additional facts; such as, the fact that the plaintiff's home was also used as defendant's Pennsylvania sale's office for a period of around sixteen years. *Pritchett*, 2020 Dist. LEXIS 96316, at *8-9. The defendant in *Pritchett* setup operations in Pennsylvania in an attempt to reach the market in the geographic region, and then conducted significant sales operations from the plaintiff's in-home office which doubled as the defendant's Pennsylvania office. (*Id.*)

The case *sub judice* is distinguishable from *Pritchett* because Plaintiff makes no allegation that SN Assets attempted to solicit business or setup sales operations here in Pennsylvania. Plaintiff simply argues that she reported to SNP Transformations' Pennsylvania office where she incidentally performed service for SN Asset's in her role as an advisor to the Decedent. She further alleges that she was compensated for these services which is insufficient to establish specific jurisdiction. *Grainer,* 2017 U.S. Dist. LEXIS 25934, at *5.

At the risk of mischaracterizing Plaintiff's argument, she in essence seems to rely on a "joint employer" or "single employer" theory of liability in an attempt to establish specific personal jurisdiction over SN Assets. A joint employment relationship exists when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *NLRB v. Browning-Ferris Industries of Pennsylvania*, 691 F.2d 1117, 1123 (3d Cir. 1982). Under Title VII, for example, two entities can be "joint employers". *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015). Alleging this

8

theory of liability alone fails to confer personal jurisdiction. *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010) (finding the plaintiff's joint employer theory irrelevant for determining personal jurisdiction), aff'd, 683 F.3d 462 (3d Cir. 2012); *Horowitz v. AT&T Inc.*, No. 17-4827, 2018 U.S. Dist. LEXIS 69191, at *19 (D.N.J. Apr. 25, 2018) ("'single employer' or 'joint employer" theories 'and similar concepts are relevant for determining liability, but are not for determining whether a court may exercise personal jurisdiction over a party'").

In reference to Plaintiff's negligence, gross negligence and recklessness theories of liability as pled against SN Assets (Amended Complaint ¶¶ 84-87), a review of the Amended Complaint does little to establish that any of the wrongful acts occurred in Pennsylvania. For example, Plaintiff alleges she met the Decedent in Las Vegas, Nevada where she was groped and harassed. (*Id.* ¶ 29.) She further alleges that she was groped at Decedent's personal residence which doubled as SN Assets business office – the Bluefield House – in Irving, Texas. (*Id.* ¶¶ 13, 37.) She also alleges that Decedent raped her at the Bluefield House (*Id.* ¶ 34), and harassed her on a road trip from Dallas to Pennsylvania. (*Id.* ¶ 40.d.) She alleges that Decedent punched her while on a business trip (*Id.* ¶ 40.a), and that Decedent entered her hotel room without permission at night while she was asleep when they attended the 2019 SAPPHIRE conference. (*Id.* ¶ 40.b.)

Absent from the allegations leveled by Plaintiff is any clear factual assertion that wrongful or inappropriate conduct occurred in Pennsylvania. Plaintiff's position on specific jurisdiction against SN Assets is further eroded by her failure to aver that she named SN Assets in the Charge of Discrimination that she filed with the EOCC. (Amended Complaint ¶¶ 17, 18.) She simply alleges that she filed a Charge of Discrimination against SNP Transformations (*Id.*)

9

which suggests that she did not view herself as an employee of SN Assets while working in Pennsylvania.

**B.      Motion to Dismiss Amended Complaint filed by Defendant, SNP SE**.

Plaintiff argues that there are two theories under which the Court can exercise personal jurisdiction over SNP SE.  First, Plaintiff argues that a theory of specific personal jurisdiction is appropriate based on her connection with SNP SE.  She then relies on a theory of alter ego personal jurisdiction and argues that personal jurisdiction is appropriate based on SNP SE's relationship with SNP Transformation as its alter ego.  The Court will separately address each of the theories of personal jurisdiction advanced by Plaintiff.

**B.1     Plaintiff Fails to Establish that Specific Personal Jurisdiction is Appropriate against SNP SE:**

In support of her argument that the exercise of specific personal jurisdiction is appropriate over SNP SE, Plaintiff cites to the fact that her salary, which was paid by SNP Transformations, was charged back to its German parent company SNP SE.  (Opp. Brief at page 7, ECF No. 59; Amended Complaint ¶ 24; Schrotberger Affidavit ¶ 8.)  She further argues that she performed services for SNP SE while working in Pennsylvania and in other locations.  Specifically, she cites to the fact that she worked on the SAPPHIRE conference in which took place in Orlando, Florida, and the Transformation World conference which took place in Heidelberg, Germany.  (Schrotberger Affidavit ¶ 15.)  With little explanation as to the specific details of the project or where it occurred, Plaintiff also alleges she worked on the KPI Leadership initiative.  (*Id.* ¶ 15.)

Plaintiff's argument in favor of exercising specific personal jurisdiction over SNP SE fails for all of the reasons that were previously explained by the Court when it declined to exercise jurisdiction over SN Asset.  The same logic and legal analysis apply to both Defendants.

The fact that Plaintiff lived and worked in Pennsylvania coupled with the fact SNP Transformations paid Plaintiff's salary and then charged in back to SNP SE, does not subject SNP SE to specific personal jurisdiction in Pennsylvania. *Gaul v. Zep Mfg. Co.*, No. 03-2439, 2004 U.S. Dist. LEXIS 9689, *15 (E.D. Pa. May 26, 2004) (granting summary judgment after concluding that the court could not exercise personal jurisdiction over a parent company simply because it was listed as plaintiff's employer on her W-2 form and issued her paychecks); *Bernisky v. Baylor Trucking, Inc.*, 2007 U.S. Dist. LEXIS 47286, at *5-6 (E.D. Pa. June 29, 2007).

This Court is of the opinion that even if Plaintiff preformed services for SNP SE while working for SNP Transformations in Pennsylvania, these facts do not confer specific personal jurisdiction over SNP SE under the circumstances. Plaintiff makes no clear assertion that the services she performed were directly targeted at Pennsylvania or intended to reach the market located in the Pennsylvania region. To the extent that Plaintiff might allege that she performed services targeted at the Pennsylvania geographic region, she worked for SNP Transformations which maintained an office located in Pennsylvania and does not contest jurisdiction—SNP Transformations is a Party to this lawsuit.

**B.2    Plaintiff Fails to Establish that Alter Ego Jurisdiction is Appropriate Against SNP SE:**

Plaintiff argues that SNP Transformations is the alter ego of SNP SE; therefore, it is appropriate for the Court to exercise personal jurisdiction over SNP SE based on an alter ego theory of personal jurisdiction. To establish alter ego jurisdiction "a plaintiff must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Simeone v. Bombardier-Rotax GMBH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. March 8, 2005). "Under the alter ego theory, if a subsidiary is merely the

agent of its parent corporation or the parent corporation controls the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 470 (E.D. Pa. 2019).

The general rule is that mere ownership of a subsidiary does not subject the parent corporation to personal jurisdiction in the state of the subsidiary. *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 420 (E.D. Pa. June 20, 2005). Stated differently, "[a] parent-subsidiary relationship is by itself an insufficient reason to pierce the corporate veil in the jurisdictional context." *Dutoit v. Strategic Minerals Corporation*, 735 F. Supp. 169, 171 (E.D. Pa. 1990). A plaintiff can establish that a subsidiary is the alter ego of a parent corporation, by demonstrating that the "degree of control exercised by the parent is greater than normally associated with common ownership and directorship" and that "the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Directory Dividends, Inc. v. SBC Communications, Inc.*, No. 01-1974, 2003 U.S. Dist. LEXIS 12214, at *8-9 (E.D. Pa. July 2, 2003).

> Courts in this district consider ten factors in determining whether a subsidiary is the alter ego of its parent: (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Reynolds v. Turning Point Holding Co., LLC,* 2020 U.S. Dist. LEXIS 33163, at *9 (E.D. Pa. Feb 26, 2020) (internal citation omitted). "These factors are best viewed as a non-exclusive guide to help resolve the broader issue of whether the companies have a 'single functional and organic identity." *Simeone v. ex rel. Estate of Albert Francis Simeone, Jr. v. Bombarier-Rotax GmbH,*

12

360 F. Supp. 2d 665, 676 (E.D. Pa. 2005). "No single factor is dispositive, and the court may consider all relevant evidence to determine whether the parent exercises actual control over a subsidiary beyond that which is characteristic of a usual parent-subsidiary relationship." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 570 (M.D. Pa. 2009).

Plaintiff has failed to establish that alter ego personal jurisdiction is appropriate over SNP SE based on her theory that SNP Transformations is the alter ego of SNP SE. The Court assesses Plaintiff's argument with an eye toward the ten-factor test espoused in *Reynolds* as cited above. In an attempt to establish alter ego jurisdiction, Plaintiff avers that SNP Transformations and SNP SE had shared corporate officers and management. (Schrotberger Affidavit ¶ 13.) SNP SE openly admits that at least five individuals – SNP Transformations, Inc.'s President, two Vice Presidents, two Assistant Treasurers, and Secretary – had shared roles with both entities. (Jörg Harald Vierfuß Affidavit ¶ 5.) However, this factor is not dispositive of the issue because it is not uncommon for overlap at the highest levels of a parent and subsidiary, and does not establish alter ego jurisdiction. *Action Mfg. Co.*, 372 F. Supp. 2d at 424 ("[E]ven when there are overlapping directors between a parent company and its wholly-owned subsidiary, this is not sufficient to establish an alter ego relationship.").

Plaintiff further alleges that SNP SE controls marketing for both entities, shares a website with SNP Transformations along with a shared logo, and that all products offered by SNP Transformations come from SNP SE. (Schrotberger Affidavit ¶ 12, 14.) Plaintiff alleges that both companies hold themselves out as a one-single unified entity. (*Id.*) Specifically, she avers:

> The SNP Entities hold themselves out as one entity, rather than two distinct companies. The SNP Entities have shared marketing, such as on the SNP Entities' website, which makes no distinction between SNP Transformations and SNP SE, but represents that the "SNP Group" has "North American headquarter[s] in Irving,

13

Texas and worldwide headquarter[s] in Heidelberg, Germany, the SNP Group has over 1,600 employees worldwide and implemented over 12,500 projects." The "SNP Group" website also contains the shared logo used by both SNP Entities." (Affidavit ¶ 14.)

The fact that both entities have a common website with a unified image does not, in the view of this Court, establish alter ego jurisdiction. *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 570-571 (M.D. Pa. 2009) (holding that a parent and subsidiary's cultivating a "unified global image" through website and reports failed to "demonstrate the corporate parents' actual control over the daily affairs of their subsidiaries."); *Action Mfg.*, 375 F. Supp. 2d at 423 (concluding that alter ego jurisdiction does not arise merely because a parent corporation referred to is subsidiaries as corporate division). Equally unpersuasive is Plaintiff's allegations that SNP Transformations' product line is supplied by SNP SE. In direct contradiction, SNP SE asserts that "SNP Transformations, Inc., is a sales organization that preforms services for SNP SE on a non-exclusive basis." (Jörg Harald Vierfuß Affidavit ¶ 7.) SNP SE further asserts that SNP Transformation has its own consultants who are able to execute projects independently (*Id.*), and that it has an independent sales team that is able to approve costumer agreements below a certain threshold without approval from SNP SE. (*Id.* ¶ 6.)

Finally, Plaintiff avers that SNP SE controls the budget for SNP Transformations. She purports to have inside knowledge, but provides nothing to establish the details for how SNP SE controls SNP Transformations' budget. For example, she avers:

> In my former role and in my current role, I work for the benefit of both SNP Entities and, therefore, have knowledge of an experience with how SNP SE exercises control over SNP Transformations' budget, intercompany changes, purchasing, and promotion. Specifically, on knowledge, information, and belief as an employee, all product for SNP Transformations comes from SNP SE, marketing for the SNP Entities is done globally through SNP SE, and SNP Transformations' budget is controlled by SNP SE.

14

(Schrotberger Affidavit ¶ 12.) Plaintiff's conclusory statement referencing control over SNP Transformations' budget is insufficient to establish alter ego personal jurisdiction.

**C.     Plaintiff's Request to Conduct Jurisdictional Discovery of Alter Ego Jurisdiction will be Denied:**

Plaintiff petitions this Court for leave to conduct jurisdictional discovery if the Court finds Plaintiff unable to meet her burden to establish alter ego jurisdiction over SNP SE. (Opposition Brief page 13, ECF No. 59.) "A plaintiff's right to conduct jurisdictional discovery should be sustained if a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." *Bell v. Fairmont Raffles Hotel Int'l*, No. 12-757, 2013 U.S. Dist. LEXIS 166937 *1, *20 (W.D. Pa. November 25, 2013) (citing *Toys "R" Us, Inc. v. Step Two*, S.A. 318 F.3d 446, 456 (3d Cir. 2003)). "However, a trial court 'has discretion to refuse to grant jurisdiction[al] discovery' and 'may deny jurisdictional discovery where a plaintiff has failed to meet its burden of making out a threshold prima facie case of personal jurisdiction.'" *Id.* This Court finds that Plaintiff fails to satisfy her burden and fails to demonstrate that additional discovery would bolster Plaintiff's arguments in support of jurisdiction. This Court therefore denies Plaintiff's request to conduct jurisdictional discovery.

**IV.     Conclusion:**

For these reasons, the motions to dismiss for lack of jurisdiction will be granted and Defendants, SN Assets and SNP SE, will be dismissed from this action. An appropriate order will follow.

BY THE COURT:

/s/ John Milton Younge
_____
Judge John Milton Younge
